IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| NADIA CARREIRA, and ALFRED CARREIRA,<br><br>       Plaintiffs,<br> v.<br>WENDY DUVALL and WILLIAM G. AZAR,<br><br>       Defendants.<br>WENDY DUVALL,<br>   Third-Party Plaintiff,<br> v.<br>TERRI CRANFIELD, M.D. and JIM VALCARCE,<br>   Third-Party Defendants. | <br><br><br><br><br><br><br><br><br><br><br><br><br><br>Case No. 3:12-cv-00138-SLG |

## ORDER RE ALL PENDING MOTIONS

### I. MOTIONS PRESENTED

Before the Court are three motions: a Motion to Determine Rule of Law filed by plaintiffs Nadia and Alfred Carreira at Docket 25, a Motion to Dismiss filed by third-party defendant Terri Cranfield at Docket 40, and a Motion to Dismiss filed by third-party defendant Jim Valcarce at Docket 46. Oral argument was held on the Carreiras' motion on January 11, 2013, but was neither requested nor necessary to the Court's determination of the two motions to dismiss. For the reasons discussed below, the Court grants all three motions.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The relevant facts for purposes of these pending motions, as alleged in the Carreiras' Complaint and Ms. Duvall's Third-Party Complaint, are as follows:

Ms. Carreira underwent surgery on January 11, 2009. The surgery was performed by Terri Cranfield at the Alaska Native Medical Center. The Carreiras allege that Dr. Cranfield performed the surgery "in a reckless and negligent manner" that "fell below the applicable standard of care in many respects."[1] They also maintain that "[a]s a direct and proximate result of Dr. Cranfield's negligence, Nadia had to undergo three additional surgeries and procedures in an attempt to correct the injuries caused by Dr. Cranfield."[2]

On January 20, 2009, the Carreiras contacted the Law Office of Azar and Schlehofer, P.C. for legal advice regarding the surgery.[3] Ms. Carreira executed a contingency fee agreement with the firm on March 27, 2009.[4] The Carreiras assert that the case was assigned to Ms. Duvall who worked under the supervision of Mr. Azar.[5]

Two years later, in January 2011, the Carreiras allege that Mr. Azar met with attorney Jim Valcarce to discuss transferring Ms. Carreira's case.[6] On April 6, 2011, Mr. Valcarce began representing Ms. Carreira, but no new fee agreement was created

---

[1] Docket 1 at 2 ¶¶ 7-8 (Compl.).

[2] Docket 1 at 2 ¶¶ 6-9 (Compl.).

[3] Docket 1 at 4 ¶ 14 (Compl.).

[4] Docket 1 at 4 ¶ 15 (Compl.).

[5] Docket 1 at 5 ¶ 19 (Compl.).

[6] Docket 1 at 9 ¶ 36 (Compl.).

and the Carreiras believed that Mr. Azar continued to be the primary attorney on the case.[7] Mr. Valcarce, however, filed a complaint against Dr. Cranfield on July 9, 2011 on behalf of the Carreiras in federal district court.[8] Ms. Carreira agreed to the voluntary dismissal of that Complaint after it was discovered that certain claims had not been properly exhausted, Dr. Cranfield was not an employee of the United States, and the statute of limitations on claims against Dr. Cranfield had already expired.[9]

The Carreiras filed this suit against Ms. Duvall and Mr. Azar on June 27, 2012. The Carreiras allege that they hired these attorneys to pursue a medical malpractice action with respect to the January 2009 surgery, but due to the attorneys' failure to file an action within the applicable statute of limitations and other negligence, the Carreiras lost their ability to recover in such an action.[10] On October 31, 2012, Ms. Duvall filed an Answer as well as a Third-Party Complaint seeking to apportion fault to Dr. Cranfield and Mr. Valcarce.[11] The Third-Party Complaint incorporates the claims in the Carreiras' Complaint "by reference for illustrative purposes only."[12]

The Carreiras' Motion to Determine Rule of Law was filed in November 2012 and seeks a ruling that Ms. Duvall cannot assert a third-party claim against Dr. Cranfield.[13]

---

[7] Docket 1 at 9 ¶ 37 (Compl.).

[8] Docket 1 at 9 ¶ 38 (Compl.).

[9] Docket 1 at 10-11 ¶ 44 (Compl.).

[10] Docket 1 at 1, 5-12 (Compl.).

[11] Docket 21 at 20-22 (Duvall Answer & 3d. Party Compl.).

[12] Docket 21 at 20-21 ¶4 (Duvall Answer & 3d. Party Compl.).

[13] Docket 25 (Carreira Mot.); Docket 26 (Carreira Mot. Mem.).

On January 23, 2013, Dr. Cranfield filed a Motion to Dismiss based on the same analysis raised in the Carreiras' Motion to Determine Rule of Law.[14]

On January 24, 2013, Mr. Valcarce and the Carreiras signed a "Settlement and Release of All Claims."[15]

On February 14, 2013, Mr. Valcarce filed a Motion to Dismiss, seeking dismissal from this action based on the settlement agreement.[16] The Carreiras joined in this motion on February 22, 2013.[17] Also on February 22, 2013, Ms. Duvall filed a partial opposition to the motion.[18] Mr. Valcarce filed a reply on February 28, 2013.[19] On March 11, 2013, Mr. Azar filed a qualified non-opposition to the motion.[20]

## III. DISCUSSION

### A. Jurisdiction.

This Court has diversity jurisdiction in this action pursuant to 28 U.S.C. § 1332.

---

[14] Docket 40 (Cranfield Mot. to Dismiss).

[15] Docket 46-1 (Ex. 1 to Valcarce Mot.: Settlement Agreement).

[16] Docket 46 at 2-3 (Valcarce Mot. to Dismiss).

[17] Docket 50 (Joinder of Valcarce Mot.).

[18] Docket 49 (Duvall Opp. Valcarce Mot.).

[19] Docket 51 (Reply Valcarce Mot.).

[20] Docket 55 (Azar Qualified Non-Opp.) (It appears that Mr. Azar is not opposed to the dismissal of Mr. Valcarce so long as Mr. Azar retains the ability to allocate fault to Mr. Valcarce pursuant to AS 09.17.080).

### B. Motions to Dismiss.

#### 1. Standard for Dismissal.

The two motions to dismiss were filed pursuant to Federal Rule of Civil Procedure 12(b)(6). A motion to dismiss for failure to state a claim under Rule 12(b)(6) seeks dismissal of a claim against a party based solely upon the statements made in the pleadings.[21] In evaluating a Rule 12(b)(6) motion, this Court applies the "facial plausibility" pleading standard as analyzed by the Supreme Court in *Ashcroft v. Iqbal*.[22] Under that standard, to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[23]

#### 2. Dr. Cranfield's Motion to Dismiss.

Ms. Duvall's Third-Party Complaint seeks to apportion fault to Dr. Cranfield. AS 09.17.080 provides for the apportionment of fault "in actions involving fault of more than one person[.]" However, "[t]o apportion fault to a party under AS 09.17.080, that party's conduct must be a legal cause of the plaintiff's harm."[24] In this action, the Carreiras

---

[21] *See* Fed. R. Civ. P. 12(b)(6) and (d).

[22] *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

[23] *Id.* at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

[24] *Ennen v. Integon Indem. Corp.*, 268 P.3d 277, 289 (Alaska 2012) (internal citations omitted). In that case, Jacob Ennen was seriously injured while the passenger in a vehicle driven by someone insured by Integon. Integon made a payment to cover the driver's possible liability, but denied any underinsured motorist benefits. Six years later, Integon learned its underinsured motorist provision violated Alaska insurance statutes and paid Ennen these benefits. Ennen sued Integon for bad faith and the insurer filed a third-party complaint against Craig Allen, Ennen's former attorney, claiming that Allen should have realized that Integon's policy language was defective. The superior court dismissed Allen, and the Alaska Supreme Court affirmed on the alternative ground that Allen's conduct was not a proximate cause of Ennen's damages so fault could not be apportioned to him under AS 09.17.080.

seek damages based on the alleged harms they incurred when Mr. Azar and Ms. Duvall failed to timely file a lawsuit and failed to properly investigate their potential claims.[25] The specific harm that the Carrieras incurred that underlies their lawsuit against Ms. Duvall and Mr. Azar is their inability to recover any damages from Dr. Cranfield. Had the attorneys pursued the medical malpractice claim in a timely manner, then the Carreiras would not have suffered that particular harm, as they could have been made whole as a result of that medical malpractice claim. The medical care that Dr. Cranfield provided is not a legal cause of this specific harm.[26]

Ms. Duvall cites to a Texas case, *In re Smith*, for the proposition that an underlying tortfeasor may be added as a party to a legal malpractice action against a plaintiff's former attorneys for negligently investigating the underlying tort and failing to sue the correct defendant before the statute of limitations ran.[27] However, that case holds that if the defendants had made allegations that the underlying tortfeasor "somehow tortiously contributed to any error committed by" the attorneys in their investigation of the case, then that tortfeasor could be added through a third-party complaint.[28] In that circumstance, the underlying tortfeasor can be named as a party not because she allegedly committed the underlying tort, but because she is alleged to

---

[25] Docket 1 at 13, 15-18.

[26] *See also Domke v. Alyeska Pipeline Service Co., Inc.*, 137 P.3d 295, 306 (Alaska 2006) (trial court erred in permitting jury to allocate fault to employee plaintiff in claim for tortious interference with employment contract).

[27] Docket 33 at 14-15 (Duvall Opp. Mot.) (citing *In re Smith*, 366 S.W.3d 282, 284 (Tex. App. 2012)).

[28] *In re Smith*, 366 S.W.3d at 286. There, the attorneys erroneously sued the mother of the underlying tortfeasor, and not the tortfeasor herself, such that a tortious contribution by the underlying tortfeasor to the attorney's negligent investigation of the claim is envisionable.

have "tortiously contributed to cause the harm for which [the plaintiff] is suing [the attorneys."[29] Here, there is no allegation that Dr. Cranfield may have contributed in some manner to the attorneys' alleged negligence. Accordingly, Dr. Cranfield may not be joined for apportionment purposes with respect to the harm alleged in the Carreiras' Complaint and Dr. Cranfield's Motion to Dismiss is GRANTED.

### 3. Mr. Valcarce's Motion.

Ms. Duvall also seeks to join Mr. Valcarce for purposes of apportionment. AS 09.17.080 provides "[i]n all actions involving fault of more than one person, including third-party defendants and persons who have settled or otherwise been released, the court . . . [shall] make findings, indicating . . . the percentage of the total fault that is allocated to each claimant, defendant, third-party defendant, person who has been released from liability, or other person responsible for the damages."[30] Thus, the statute allows fault to be apportioned to Mr. Valcarce, even though he has no further duty to defend himself or further legal interest in these proceedings. In these circumstances, he is not required to remain a party.[31] Ms. Duvall asserts that Mr. Valcarce should remain a party for ease in taking his deposition. If he is dismissed, she contends he will need to be subpoenaed to require him to attend a deposition.[32] The

---

[29] *Id.*

[30] AS 09.17.080(a).

[31] *See* Restatement (Third) of Torts § 24 cmt. e (2000) ("When a settlement is reached between the plaintiff and a potentially liable tortfeasor that releases only the settling tortfeasor, the settling tortfeasor ordinarily should be dismissed from the lawsuit or, if no suit has been initiated, not joined in any action that is subsequently brought. Dismissal occurs even if contribution claims have been made against or by the settling tortfeasor."); *Pagenkopf v. Chatham Elec., Inc.*, 165 P.3d 634, 643 n.38 (Alaska 2007) (relying on Restatement § 24 cmt. e).

[32] Docket 49 at 2 (Duvall Opp. to Valcarce Mot.).

only potential prejudice from dismissal is that Ms. Duvall would need to complete subpoena paperwork, pay a witness fee and serve the subpoena on Mr. Valcarce; these requirements do not constitute a sufficient reason to keep Mr. Valcarce as a party.[33] Therefore, Mr. Valcarce's Motion to Dismiss is GRANTED.

### C. The Carreiras' Motion for Ruling of Law.

As the Court has granted Dr. Cranfield's Motion to Dismiss, it follows that the Carreiras' Motion to Determine Rule of Law is GRANTED as well.

## IV. CONCLUSION

For the foregoing reasons, it is ORDERED that:

1. The plaintiffs' Motion to Determine Rule of Law at Docket 25 is GRANTED. A third-party claim may not be asserted against Dr. Cranfield.

2. Dr. Cranfield's Motion to Dismiss at Docket 40 is GRANTED, and Dr. Cranfield is DISMISSED from this action with prejudice.

3. Mr. Valcarce's Motion to Dismiss at Docket 46 is GRANTED, and Mr. Valcarce is DISMISSED from this action with prejudice, but this does not affect the defendants' right to seek to apportion fault to him.

4. The Clerk of Court is directed to amend the case caption to delete the Third Party Complaint.

DATED at Anchorage, Alaska this 16th day of April, 2013.

/s/ Sharon L. Gleason
United States District Judge

---

[33] Docket 51 at 3 (Reply to Duvall Opp. to Valcarce Mot.).